# Terry *v.* Birmingham National Bank.

*Action on Promissory Note.*

1. *Plea of set-off; allegations of conversion by plaintiff* —By a plea averring that the plaintiff was indebted to the defendant for the value of corporate stock belonging to the defendant, "which was sold

by plaintiff for the use of defendant, and converted to its use, which he offers to set-off against the demand of plaintiff," the defendant ratifies said sale and claims as a set-off the purchase-price of the stock ; and is not entitled to recover its actual value.

2. *Stock sold on exchange; agent for seller and buyer.*—The fact that a member of the Stock Exchange, who was employed by the pledgee of the stock to sell it on the Exchange, was also employed by a buyer to purchase, at a limited price. stock of the character offered by the pledgee, does not invalidate the sale effected by such member, if. in accordance with the rules of the Exchange. he procured a fellow member to make the bid, and neither the pledgee nor the purchaser had any knowledge of each other's intentions, or of their instructions to their agent.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This was an action of assumpsit brought by the Birmingham National Bank against R. J. Terry, to recover the amount alleged to be due upon a promissory note ; and was commenced on July 27, 1889. This is the second appeal in this case.—93 Ala. 599.

As is stated in the opinion, after the reversal of the cause, the trial was had on issue joined on the plea of set-off. The fourth plea referred to in the opinion, "offers to recoup against the said note the value of said stock, . . . . . and asks for a judgment against the plaintiff for the difference between the value of said stock with interest thereon and the amount claimed to be due on said note." The note, which is the foundation of the present suit, was executed by the defendant on May 4, 1888, and fell due on June 25, 1888. As collateral security for the indebtedness evidenced by the said note, the defendant deposited with the plaintiff fifty shares of the capital stock of the Edison Electric Illuminating Company. After the maturity of the note, the defendant gave to R. D. Johnston, president of the plaintiff corporation, a power of attorney, authorizing him to sell said stock on the Stock Exchange in the city of Birmingham. After the execution of this power of attorney, the said Johnston employed one Lightfoot, a stock broker, to sell the stock on the Exchange. After this employment by Johnston, said Lightfoot was also employed by one E. W. Rucker to purchase for him at a limited price, some stock of the character of that offered by Johnston. After receiving this order to purchase the said stock, Lightfoot procured one Bradfield, a stock broker, and also a member of the Exchange, to make the bid authorized by Rucker for the stock when offered for sale by Lightfoot on the Exchange. In accordance with this arrangement, Lightfoot offered the stock for sale, and it was bid in by Bradfield. The proceeds of this

[Terry v. Birmingham National Bank.]

sale were credited upon the note executed by the defendant, Terry, and the amount claimed on said note is the balance due thereon, after deducting this credit and other credits made upon the payment of different amounts by the defendant.

The testimony was in conflict as to whether the sale of this stock on the Stock Exchange was valid. There was some testimony for the defendant tending to show that under the rules of the Stock Exchange it was a fictitious sale.

The testimony for the plaintiff tended to show that neither the plaintiff nor said Johnston knew of the intention of said Rucker to purchase the stock offered for sale, nor of his employment of said Lightfoot to make the purchase, or of the instructions given by Rucker to said Lightfoot; and that the said Rucker did not know of the employment by said Johnston of the said Lightfoot to sell the stock, and that neither the plaintiff nor said Johnston had any interest whatever in the purchase of said stock.

It was shown by the testimony of the defendant himself, that he was present in the Stock Exchange at the time the stock was sold, and was informed of the intention to sell the stock on the day of sale; and that he never made any complaint about the manner in which the stock was sold.

Upon the hearing of all the evidence, at the request of the plaintiff, the court gave the general affirmative charge in its behalf, and to the giving of this charge the defendant duly excepted. There were other exceptions reserved upon the trial of the cause, but it is deemed unnecessary to set them out in detail.

On this appeal, the defendant assigns as error, among other rulings, the giving of the general affirmative charge in favor of the plaintiff.

LANE & WHITE, for the appellant.—The sale of the stock in this case was a conversion by the plaintiff of said stock, and rendered it liable to the defendant for the value thereof. 4 Amer. & Eng. Encyc. of Law, p. 108, § 4, and note; Tyler on Usury, Pawns & Loans, p. 642; *Penny v. State*, 88 Ala. 105; *Thweatt v. Stamps*, 67 Ala. 96. The sale of the stock by Lightfoot, under the circumstances, was a fraud, and did not divest the title of the defendant to said shares. An agent can not, in the same transaction, represent both the buyer and seller.—Beacham on Agency, §§ 66, 67, 68, 643, 789; 1 Amer. & Eng. Encyc. of Law, p. 380, and cases cited in note 1; *Farnsworth v. Hemmer*, 1 Allen (Mass.) 494; s. c.

VOL. XCIX.

[Terry v. Birmingham National Bank.]

79 Amer. Dec. 756, *Wassell v. Reardon*, 11 Ark. 705; s. c, 54 Amer. Dec. 245; *Harrison v. McHenry*, 9 Ga. 164; s. c. 52 Amer. Dec. 435.

CABANISS & WEAKLEY, *contra.*—1. Even though the stock was sold by Lightfoot & Co., in the way claimed by the defendant, and such sale was a fictitious sale within the meaning of the rules of the Stock Exchange, such conduct on the part of Lightfoot & Co., did not amount to a conversion of the stock.—*Dufresne v. Hutchinson*, 3 Taunt. 117; *Sargeant v. Blunt*, 16 John. (N. Y.) 73; *Laverty v. Snethen*, 68 N. Y. 526; *Bixel's Case*, 107 Ind. 537; *Ins. Co. v. Dalrymple*, 25 Md. 242, s. c. 89 Amer. Dec. 779; *Lovelass v. Fowler*, 11 Amer. St. Rep. 407. 2. But however wrongful may have been the conduct of Lightfoot & Co., in selling the stock as they did, the plaintiff was not responsible for the same. Where an agent is authorized to employ an ancillary agent, such ancillary agent becomes individually liable to the principal, and the primary agent is liable only for *culpa in eligendo.*—Commentaries on Agents & Agencies, (Wharton), §§ 277, 238, 601; 1 Amer. & Eng. Encyc. of Law, pp. 394, 407, n. 2; *Darling v. Stanwood*, 96 Mass. 507; *Warren Bank v. Suffolk Bank*, 10 Cush. 582; *University of Mich. v. Rose*, 45 Mich. 284; *Hilliard v. Richardson*, 63 Amer. Dec. 743; *Mayor v. McCary*, 84 Ala. 472; *Campbell v. Reeves*, 3 Head (Tenn.), 226. 3. The defendant, not having the legal title to the stock, could not maintain trover for the conversion of same, nor plead such conversion as a set-off to this action.—*Nabring v. Bank of Mobile*, 58 Ala. 204; *Halliday v. Holgate*. L. R. 3 Ex. 299; *Johnson v. Stear*, 15 C. B., N. S. 330; Colebrooke on Collateral Securities, § 344.

COLEMAN, J.—The Birmingham National Bank sued appellant Terry upon his promissory note. The record shows that "the defendant withdraws all pleas, except the plea of set-off, and the case tried on issue joined on the plea of set-off." It would require a palpable disregard of this plain record entry were we to consider questions which might have legally arisen under other pleas, and which were not before the court. There was only one plea, and that was the plea of set-off, upon which issue was joined. Plea No. 2 reads as follows: "The defendant, as a defense to the action of the plaintiff, sayeth that, at the time said action was commenced, the plaintiff was indebted to him in the sum of five thousand dollars, for the value of fifty shares of the capital stock of The Edison Electric Illuminating Company, the

property of the defendant, which were sold by the plaintiff for the use of the defendant on or about the 8th day of December, 1888, and converted to its use, which he hereby offers to set-off against the demand of the plaintiff, and he claims judgment for the excess." This plea distinctly states the shares were "sold by the plaintiff for the use of the defendant," and although these words in the latter part of the plea are followed by the averment, "and converted to its use," the latter phrase, in the connection used, must be held to mean a conversion of the proceeds of the sale, rather than such wrongful conversion of the stock itself, as to authorize proof of damages resulting to the defendant by the sale. As framed, the defendant, by this plea, ratified the sale, and claimed, as a set-off the purchase price of the stock. The evidence is uncontradicted that the plaintiff credited the note with the purchase money received for the stock, and in his suit on defendant's note, only claimed the balance unpaid.

Were we to consider the case as tried on plea No. 4, and regard that plea in the nature of a claim for damages, under the facts, the measure of recovery would be the difference between the price for which the stock sold, and its actual value when sold. And we have been unable to find any evidence, which would authorize a conclusion, that the stock did not bring its fair value on the day of sale. There is no evidence to show that there was any collusion or fraud or agreement between R. D. Johnston, representing the Bank, and the purchaser of the stock in regard to its sale or purchase. In fact the contrary is abundantly proven. Terry, who was a member of the Stock Exchange, by his power of attorney, directed that this stock be sold upon the Exchange. He was notified that it was going to be sold, was present when it was offered for sale, and knocked down to the purchaser. He knew the rules of the Stock Exchange, knew that the seller would be required to conform to its rules, and that a sale, made in accordance with them, would be a valid sale. There was no objection by him, at the time, that he had not had sufficient notice, nor did he object on account of the price bid. The subsequent advance in the market value of stock sold on exchange doubtless is a fruitful source of regret to sellers, who deal in stocks on exchange, but, in the absence of fraud, the advance in price can give no cause of action to the loser.

The principle of law that the same person can not be both buyer and seller has no application to the facts of the case. R. D. Johnston employed Lightfoot, a member of the Stock Exchange, to sell this stock. One E. W. Rucker, the pur-

[Oxanna Building Association v. Agee.]

chaser, employed Lightfoot to purchase on the exchange, at a limited price, stock of the character offered by Johnston. Johnston knew nothing of Rucker's engagement or intentions. In accordance with the rules of the exchange, Lightfoot secured the services of Bradfield, another member of the exchange, to bid the price fixed by Rucker. Lightfoot knew the instructions of both Johnston and Rucker, but neither Johnston nor Rucker had any knowledge of each other's intentions, or their instructions to Lightfoot. And as we have stated, there is no evidence to show, that the rules of the Stock Exchange, which were known to Terry, were not observed, or that the stock did not bring its fair market value, which was credited upon the note of the defendant.

Under any view we take of the case, the plaintiff was entitled to the general charge upon all the evidence, and it is unnecessary to consider special exceptions to the rulings of the court.

Affirmed.

*Action on Promissory Note.*